**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000366
21-FEB-2018
09:31 AM**

NO. CAAP-16-0000366

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ABIGAIL K. KAWANANAKOA, Plaintiff-Appellant, v.
CITY AND COUNTY OF HONOLULU, Defendant-Appellee,
and DOE DEFENDANTS 1-10; DOE CORPORATIONS 1-10;
DOE GOVERNMENT ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-1756)


MEMORANDUM OPINION
(By: Reifurth, Presiding Judge, and Chan, J., with Circuit
Judge Kim, in place of Nakamura, C.J., Fujise, Leonard,
and Ginoza, JJ., all recused, concurring separately)

This case arises out of a complaint for declaratory and injunctive relief filed in September 2015 by Plaintiff-Appellant Abigail K. Kawananakoa in her capacity as a taxpayer challenging twelve ordinances and resolutions adopted between 2006 and 2012 by Defendant-Appellee City and County of Honolulu related to the City's rail transit system (the "Actions").[1]  Kawananakoa appeals from the April 1, 2016 Final Judgment entered by the Circuit Court of the First Circuit ("Circuit Court"),[2] which dismissed the complaint with prejudice.  We affirm.

---

[1]    Kawananakoa asserts that the following bills and resolutions adopted by the Honolulu City Council ("City Council") are null and void: Bill 82 (2006), enacted as Revised Ordinances of Honolulu ("ROH" or "Revised Ordinances") no. 06-50 (December 22, 2006); Bill 79 (2006), enacted as ROH no. 07-001 (Jan. 8, 2007); Resolution 10-124 (adopted June 9, 2010); Bill 5 (2010), enacted as ROH no. 10-6 (May 6, 2010); Resolution 10-49 (adopted May 12, 2010); Resolution 10-68 (adopted April 21, 2010); Resolution 10-86 (adopted May 12, 2010); Bill 33 (2012), enacted as ROH no. 12-22 (June 22, 2012); Bill 31 (2012), enacted as ROH no. 12-22 (June 22, 2012); Bill 32 (2012), enacted as ROH no. 12-23 (June 22, 2012); Bill 37 (2012), enacted as ROH no. 12-17 (June 15, 2012); and Bill 51 (2009), enacted as ROH 09-32 (October 30, 2009).

[2]    The Honorable Virginia Lea Crandall presided.

I.   BACKGROUND

On November 6, 2015, Kawananakoa filed the First Amended Complaint for Declaratory and Injunctive Relief ("First Amended Complaint"), alleging that the Actions were void and unenforceable because they were enacted by councilmembers who failed to disclose conflicts of interest or received gifts in excess of $200 in violation of the limit set by ROH section 3-8.8(b).[3/]

The City filed a motion to dismiss the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim under Hawaii Rules of Civil Procedure Rules 12(b)(1) and (6).  The City argued that Kawananakoa did not have a private right of action to enforce the standards of conduct cited in the First Amended Complaint, the First Amended Complaint addressed non-justiciable political questions, and the First Amended Complaint failed to state a cause of action for declaratory judgment and injunctive relief.

Kawananakoa countered that a taxpayer does not need a private right of action to challenge the validity of an ordinance; she was not raising a political question because she was not attempting to enforce an ordinance or recover damages, but was seeking to apply the long-standing rule ("common-law principle") that a city council measure passed on a disqualified vote is invalid;[4/] and there was a genuine controversy for which

---

[3/]     Kawananakoa alleges that between April 2008 and 2011 Councilmember Nestor R. Garcia voted on at least fifty bills and resolutions, including the proposed rail mass transit system, without disclosing to the City Council and the Honolulu Ethics Commission his position with the Kapolei Chamber of Commerce as required by Revised Charter of the City and County of Honolulu ("RCH" or "Revised Charter") section 11-103.  Councilmember Garcia is also alleged to have violated ethics laws involving gift cap violations between 2008 and 2013, and voted on forty-two bills and resolutions without first disclosing conflicts of interest arising from his receipt of prohibited gifts.  Kawananakoa alleges that between 2006 and 2008 Councilmember Romy M. Cachola accepted prohibited gifts from lobbyists and failed to disclose that conflict prior to voting on approximately one hundred bills and resolutions.  Finally, Kawananakoa alleges that "[a]t least five additional members of the City Council" also voted on a number of the Actions while under undisclosed conflicts of interest, which appear to involve alleged gift cap violations.

[4/]     Kawananakoa argues that "disqualification by interest of 'a majority of those voting for the ordinance, or even one vote, if that vote determined the passage of the ordinance, **would establish the invalidity of the ordinance**[,]'" quoting *Waikiki Resort Hotel, Inc. v. City & Cty. of Honolulu*,

(continued...)

declaratory relief was appropriate.

The Circuit Court granted the City's motion with prejudice and without leave to amend, concluding that "Plaintiff must have a private right of action to seek the relief requested in this complaint, and . . . that the Plaintiff does not have a private right of action to seek the relief requested in this case[.]" The court considered Kawananakoa's common-law argument and concluded that "Plaintiff's interest as a taxpayer is not protected by the common law doctrine that is submitted." The Circuit Court issued its Order Granting Defendant City and County of Honolulu's Motion to Dismiss First Amended Complaint ("Order") and entered the Final Judgment in favor of the City. Kawananakoa appealed.

II. POINTS OF ERROR

On appeal, Kawananakoa alleges that the Circuit Court erred when it dismissed the First Amended Complaint on the basis that (1) a taxpayer must have a private right of action in order to challenge the validity of a municipal act or ordinance, and (2) the "long-standing rule that a municipal measure passed on a disqualified vote is invalid did not apply to legislative actions."

III. STANDARD OF REVIEW

*Motion to Dismiss*

A trial court's grant or denial of a motion to dismiss for "lack of subject matter jurisdiction is a question of law, reviewable *de novo*." *Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), *aff'd*, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994).

---

<sup>4</sup>/(...continued)
63 Haw. 222, 248, 624 P.2d 1353, 1371 (1981) (quoting *Marshall v. Ellwood City Borough*, 41 A. 994 (1899)). *See also Hui Malama Aina O Ko'olau v. Pacarro*, 4 Haw. App. 304, 666 P.2d 177 (1983) (recognizing that a lawmaker's undisclosed personal interest in a matter before him disqualifies him from voting and renders his vote a nullity for purposes of determining whether a matter was properly enacted).

*Standing*

>       Whether the plaintiff had standing to bring his or her claim presents a question of law, reviewable de novo. *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Hawaiʻi 77, 90, 148 P.3d 1179, 1192 (2006); *see also Keahole Def. Coal., Inc. v. Bd. of Land & Nat. Res.*, 110 Hawaiʻi 419, 427-28, 134 P.3d 585, 593-94 (2006). Further, standing must be addressed before we reach the merits, and "may be addressed at any stage of a case." *Keahole Def. Coal., Inc.*, 110 Hawaiʻi at 427, 134 P.3d at 593 [("The issue of standing implicates this court's jurisdiction, and, therefore, must be addressed first.")]

*McDermott v. Ige*, 135 Hawaiʻi 275, 282, 349 P.3d 382, 389 (2015).

*Interpretation of Municipal Charter and Ordinance*

>       Statutory interpretation is "a question of law reviewable de novo." *State v. Levi*, 102 Hawaiʻi 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo*, 84 Hawaiʻi 1, 10, 928 P.2d 843, 852 (1996)). This court's statutory construction is guided by established rules:

>> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> *Peterson v. Hawaii Elec. Light Co., Inc.*, 85 Hawaiʻi 322, 327-28, 944 P.2d 1265, 1270-71 (1997), superseded on other grounds by [Haw. Rev. Stat.] § 269-15.5 (Supp. 1999) . . . .

>       "When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes." *Weinberg v. City & Cnty. of Honolulu*, 82 Hawaiʻi 317, 322, 922 P.2d 371, 376 (1996) (quoting *Bishop Square Assoc. v. City & County of Honolulu*, 76 Hawaiʻi 232, 234, 873 P.2d 770, 772 (1994) (quoting *Waikiki Resort Hotel v. City & County of Honolulu*, 63 Haw. 222, 239, 624 P.2d 1353, 1365 (1981))). "The purpose of the ordinance may be obtained primarily from the language of the ordinance itself[.]" *Id.*

*Rees v. Carlisle*, 113 Hawaiʻi 446, 452, 153 P.3d 1131, 1137 (2007).

IV.  DISCUSSION

>    A.    The Circuit Court did not conclude that a taxpayer can only challenge a municipal action if she can first establish a private right of action.

Kawananakoa's first point of error misstates the basis for the Circuit Court's Order. She contends that the Circuit Court erred when it dismissed the First Amended Complaint "on the grounds that a taxpayer *can only challenge the validity of a municipal act or ordinance* if she can establish the existence of a private right of action." (Emphasis added.) In dismissing the First Amended Complaint, however, the Circuit Court was not so broad in its holding, stating only that "Plaintiff must have a private right of action *to seek the relief requested in the complaint*, and . . . Plaintiff does not have a private right of action *to seek the relief requested in this case*." (Emphasis added.)

In her First Amended Complaint, Kawananakoa seeks declaratory and injunctive relief on the basis that the Actions are invalid under RCH, art. XI, sections 11-101-104,[5] and ROH,

---

[5]    RCH, art. XI, sections 11-101-104 provide that:

**11-101. Declaration of Policy -**

Elected and appointed officers and employees shall demonstrate by their example the highest standards of ethical conduct, to the end that the public may justifiably have trust and confidence in the integrity of government. They, as agents of public purpose, shall hold their offices or positions for the benefit of the public, shall recognize that the public interest is their primary concern, and shall faithfully discharge the duties of their offices regardless of personal considerations.

**11-102. Conflicts of Interest -**

    1.    No elected or appointed officer or employee shall:
    (a)    Solicit or accept any gift, directly or indirectly, . . . under circumstances in which it can reasonably be inferred that the gift is intended to influence the officer or employee in the performance of such person's official duties. Nothing herein shall preclude the solicitation or acceptance of lawful contributions for election campaigns.

    . . . .

    (c)    Engage in any business transaction or activity or have a financial interest, direct or indirect, which is incompatible with the proper discharge of such person's official duties or which may tend to impair the independence of judgment in the performance of such person's official
    (continued...)

art. VIII, section 3-8.8(b)[6] (collectively, the "Ethics Code Provisions").[7] Specifically, Kawananakoa seeks:

> A. A declaration that (1) the votes cast by [Councilmember] Cachola, [Councilmember] Garcia, and other councilmembers while under undisclosed conflicts were invalid, and (2) the resulting laws that turned on said invalid votes are void and unenforceable;

---

[5] (...continued)

duties.

\* \* \* \*

**11-103. Disclosure of Interest -**

Any elected or appointed officer or employee who possesses or who acquires such interests as might reasonably tend to create a conflict with the public interest shall make full disclosure in writing to such person's appointing authority or to the council, in the case of a member of the council, and to the ethics commission, at any time such conflict becomes apparent. Such disclosure statements shall be made a matter of public record and be filed with the city clerk. Any member of the council who knows he or she has a personal or private interest, direct or indirect, in any proposal before the council, shall disclose such interest in writing to the council. Such disclosure shall be made a matter of public record prior to the taking of any vote on such proposal.

**11-104. Fair and Equal Treatment -**

Elected or appointed officers or employees shall not use their official positions to secure or grant special consideration, treatment, advantage, privilege or exemption to themselves or any person beyond that which is available to every other person.

[6] ROH, art. VIII, section 3-8.8(b) & (d) provide that:

**Gifts to councilmember-Prohibition under certain circumstances.**

. . . .

(b) During each one-year period beginning on July 1st and ending on June 30th, no councilmember shall solicit, accept, or receive, directly or indirectly, from any one source any gift or gifts, not exempted by subsection (c), valued singly or in the aggregate in excess of $200.00.

. . . .

(d) A violation of this section by a councilmember shall be punishable in accordance with Section 3-8.5.

[7] Kawananakoa argues that she does not seek to enforce the Ethics Code Provisions, but the common-law right to invalidate a municipal action taken by disqualified lawmakers. The claim that the lawmakers are disqualified in the first place, however, is based on alleged violations of the Ethics Code Provisions. We take up that issue further as part of our consideration of Kawananakoa's second point of error.

6

> B.    The issuance of appropriate equitable and injunctive relief enjoining the City from enforcing or continuing to fund the laws whose passage turned on the invalid votes until such time as the laws are ratified in accordance with orders of this Court; [and]
>
> C.    The entry of an order directing the City Council to hold a new vote on each invalid measure of non-conflicted City Council members who are not otherwise disqualified from voting[.]

The Ethics Code Provisions, however, explicitly provide for the relief available for their violation.[8]   That relief includes impeachment, actions for recovery brought by the City,

---

[8]    Penalties under the RCH for violations of article XI include:

> The failure to comply with or any violation of the standards of conduct established by this article of the charter or by ordinance shall be grounds for impeachment of elected officers .  .  .  .    The ethics commission may also impose civil fines established by ordinance for violations of the standards of conduct committed by elected and appointed officers and employees of the city with significant discretionary or fiscal power as determined by ordinance.

Rev. Charter Hon., art. XI, § 11-106 (2015).

> Penalties under the ROH for violation of the Ethics Code Provisions include:

(a)    The failure to comply with or any violation of the standards of conduct of this article or of Article XI of the revised charter shall be grounds for impeachment of elected officers and for the removal from office or from employment of all other officers and employees. .  .  .

(b)    In addition to any other penalty provided by law, any contract entered into by the city in violation of Article XI of the revised charter or of this article is voidable on behalf of the city; provided, that in any action to void a contract pursuant to this article the interest of third parties who may be damaged thereby shall be taken into account, and the action to void the official act or action is initiated within six months after the matter is determined by the ethics commission.

(c)    The city, by the corporation counsel, may recover any fee, compensation, gift or profit received by any person as a result of a violation of the standards in this article or in Article XI of the revised charter by an officer or employee or former officer or employee.  Action to recover under this subsection shall be brought within four years of such violation.

(d)    In addition to any other penalty, sanction or remedy provided by law, the ethics commission may impose a civil fine against a former or current officer or exempt employee of the city who has been found by the ethics commission to have violated the standards of conduct in Article XI of the revised charter or this article.

Rev. Ord. Hon., art. VIII, § 3-8.5 (2015).

7

cancellation of certain contracts, and civil fines imposed by the Ethics Commission, but does not include invalidation of ordinances or resolutions, prospective de-funding of City projects, or directives for City Council re-votes.

Because Kawananakoa's first point of error posits and then argues against a position not advanced by the Circuit Court, and because Kawananakoa does not address the court's holding that a private right of action is necessary to seek the relief requested, we deem the latter point to have been waived. Although Kawananakoa's first point of error misses the mark, we proceed to consider Kawananakoa's second point of error that the common law allows for invalidation of municipal actions irrespective of the fact that the purportedly violated Revised Ordinances and Revised Charter provisions do not themselves provide for the form of relief requested.

    B.    Whether councilmembers violated the Ethics Code Provisions and whether any such violations warrant invalidation of the Actions or de-funding of the laws whose passage turned on the invalid votes involves resolution of non-justiciable political questions.

Kawananakoa's second point of error contends that the Circuit Court erred when it dismissed Kawananakoa's First Amended Complaint on the basis that the common-law principle did not apply to legislative actions. We begin by noting, as we did with regard to Kawananakoa's first point of error, that the Circuit Court does not explicitly claim to do what Kawananakoa says it did.[9/] As to this point, however, we conclude that Kawananakoa's characterization of the court's action is a fair extrapolation, and that the court did, at least in part and in partial effect, what Kawananakoa says it did.

---

[9/]    Specifically as to this subject, the court stated:

> This case involves legislative actions. . . .

> The Court, having also reviewed the cases cited by Defendant drawing the distinction between legislative and non-legislative or quasi-judicial action, finds the Defendant's arguments persuasive and finds that . . . the Plaintiff's interest as a taxpayer is not protected by the common law doctrine that she has submitted.

8

Before reaching the Circuit Court's ruling with regard to the common-law principle,[10/] however, we are confronted with the question of whether application of the principle presents a political question, the resolution of which "threatens confrontation with the other branches of government." *Hussey v. Say*, 139 Hawaiʻi 181, 188, 384 P.3d 1282, 1289 (2016) (quoting *Trustees of Office of Hawaiian Affairs v. Yamasaki*, 69 Haw. 154, 169, 737 P.2d 446, 455 (1987)). Kawananakoa recognizes that the Circuit Court's application of the common-law principle here "suggests [that] the court was somehow influenced by the 'political question' doctrine."

The political-question doctrine "is the result of the balance courts must strike between preserving separation of powers yet providing a check upon the other two branches of government." *Nelson v. Hawaiian Homes Comm'n*, 127 Hawaiʻi 185, 194, 277 P.3d 279, 288 (2012) (citing *Yamasaki*, 69 Haw. at 171, 737 P.2d at 456). In determining whether a case presents a nonjusticiable political question, the Hawaiʻi Supreme Court has adopted the six-part test enunciated by the United States Supreme Court in *Baker v. Carr*, 369 U.S. 186 (1962).[11/] The instant appeal appears to implicate at least the first three of the *Baker* tests.

---

[10/] The federal district court has held that "[i]f a case presents a political question, the federal court lacks subject matter jurisdiction to decide that question." *Williams v. United States*, CIV. No. 08-00547 SOM-KSC, 2008 WL 5225870, *2 (D. Haw. Dec. 15, 2008) (citing *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 981 (9th Cir. 2007)).

[11/] The following six tests signal the presence of a nonjusticiable political question:

> [(1)] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [(2)] a lack of judicially discoverable and manageable standards for resolving it; or [(3)] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [(4)] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [(5)] an unusual need for unquestioning adherence to a political decision already made; or [(6)] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Nelson*, 127 Hawaiʻi at 194, 277 P.3d at 288 (quoting *Yamasaki*, 69 Haw. at 170, 737 P.2d at 455 (quoting *Baker,* 369 U.S. at 217)) (brackets in original).

9

Because the Ethics Commission has been delegated the authority to determine violations of the ethics code, and together with the City Council has been delegated the authority to determine the penalty for such violations,[12] thereby suggesting "a textually demonstrable constitutional commitment of [Kawananakoa's claims] to a coordinate political department"; because we are unable to discern any "judicially discoverable and manageable standards" that we might apply in determining a violation or the necessary nexus between an alleged violation and the challenged legislative actions in the absence of an executive-branch-determined violation of the law as required by the law itself; and because invalidation of the Actions or the de-funding of laws whose passage turned on alleged invalid votes appears impossible "without an initial policy determination" by the City Council with regard to third-party consequences, we conclude that Kawananakoa's complaint presents a political question over which the Circuit Court lacked jurisdiction. *See Nelson*, 127 Hawai' at 194, 277 P.3d at 288 (quoting *Yamasaki*, 69 Haw. at 170, 737 P.2d at 455).

Kawananakoa contends that the political-question doctrine does not preclude the courts from exercising jurisdiction in this case because (1) the City Council is a municipal legislative body which lacks "co-equal" status, and (2) the political-question doctrine requires a case-by-case inquiry

---

[12]    The Revised Charter establishes the Ethics Commission and empowers it, in pertinent part, as follows:

> The commission is authorized to hold hearings and to conduct investigations concerning the application of this article of the chapter and shall have the powers provided in Section 13-114 of this charter.

> . . . .

> The commission may impose civil fines established by ordinance against elected and appointed officers and employees of the city with significant discretionary or fiscal power as determined by ordinance, found by the commission to have violated the standards of conduct established by this article of the charter or by ordinance. The commission shall recommend appropriate disciplinary action against officers and employees found to have violated the standards of conduct established by this article of the charter or by ordinance.

Rev. Charter Hon., art. XI, § 11-107 (2015).

10

that the Circuit Court was not in a position to make at this point in the proceedings. Neither of these arguments is sufficient to overcome the application of the first three of the *Baker* tests in this case.

1.   The political-question doctrine applies to actions of the City's legislative and executive branches.

Kawananakoa concedes that the political-question doctrine would bar judicial consideration of the internal workings of a co-equal branch of government, but, citing to *County of Kaua'i ex rel. Nakazawa v. Baptiste*, 115 Hawai'i 15, 165 P.3d 916 (2007), stresses that "[t]he City is a mere creature of statute, a subdivision of the State, not the State Legislature, and has only the status and power 'allocated' to it by the State." Thus, Kawananakoa argues, no action taken by a non-equal branch of the City government warrants deference by the state courts. We disagree.

The Hawai'i Constitution provides that "[e]ach political subdivision shall have the power to frame and adopt a charter for its own self-government . . . ." Haw. Const. art. VIII, § 2. Furthermore, it explicitly states that "[c]harter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions." *Id.* Thus, the constitution commits the structure and organization of Hawai'i's political subdivisions to their respective charters, and satisfies *Hussey*'s "textually demonstrable constitutional commitment" requirement for application of the political-question doctrine.

Although the political-question doctrine seeks to preserve separation of powers—which Hawai'i has recognized as between three co-equal branches, *Asato v. Procurement Policy Board*, 132 Hawai'i 333, 360, 322 P.3d 228, 255 (2014)—nothing in Hawai'i case law suggests that "co-equal" status is a precondition to the application of the political-question doctrine. Moreover, Hawai'i courts have never held that the political-question doctrine does not apply to local governments.

In fact, courts in other jurisdictions have acknowledged that "[t]he political question doctrine. . . is equally applicable to prevent interference by. . . state courts into the powers granted to the executive and legislative branches of our state and local governments." *E.g.*, *Skokos v. Corradini*, 900 P.2d 539, 541 n.3 (Utah Ct. App. 1995) ("Municipalities, as political subdivisions of the state. . . , are also subject to separation of powers notions in the context of their legislative/administrative operations and the state judiciary.").[13]/

Therefore, the fact that local government powers in Hawai'i are allocated rather than shared does not bar the application of the political-question doctrine. The doctrine applies to each of the three branches, irrespective of whether the challenged actions are legislative or quasi-judicial, as long as the actions fail one of the six *Baker* tests.

> 2. The Circuit Court had sufficient facts to conclude that the political question doctrine bars consideration of Kawananakoa's claims.

Kawananakoa argues that "even if the lower court could appropriately draw a distinction between legislative and other acts by self-interested council-persons, it did not have a sufficient record before it to make such distinctions at this early stage in the proceedings." To this end, Kawananakoa focuses on Hawai'i's lack of a fixed definition of the terms "legislative," "nonlegislative," and "quasi-judicial" in the context of a lawmaker's conflict of interest. This reasoning has no bearing on the application of the political-question doctrine because the application does not turn on rigid categories of actions, but rather, taking one of the *Baker* tests for example,

---

[13]/ *See also Warda v. City Council of City of Flushing*, 696 N.W.2d 671, 673 (Mich. 2005) ("Because the city council's decision under this statute constitutes a discretionary act of a separate branch of government, the judiciary is without authority to review it."); *Mutz v. Mun. Boundary Comm'n*, 688 P.2d 12, 19 (N.M. 1984) (citation omitted) ("Whether municipal services are adequate is a political question to be addressed, not by the courts, but by the state legislature or the municipality."); *Wilson v. Hidden Valley Mun. Water Dist.*, 63 Cal. Rptr. 889, 897 (Cal. Ct. App. 1967) ("The nature of the powers conferred upon municipal and quasi-municipal corporations and the territory included within such organizations are political questions to be determined in the discretion of the state, subject only to constitutional limitations; the solution of such questions rests with the Legislature.").

on an analysis of whether there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Hussey*, 139 Hawaiʻi at 188, 384 P.3d at 1289 (quoting *Yamasaki*, 69 Haw. at 170, 737 P.2d at 455).

In the alternative, Kawananakoa contends that "the Court should decline to engage in the level of appellate fact-finding required to sustain the lower court's judgment on political question grounds[,]" and that the city is not entitled to judicial notice of disputed facts related to the rail controversy. It is unnecessary, however, for us to find facts or take judicial notice of disputed facts related to the rail controversy to analyze whether one or more of the *Baker* tests is or are met in the present case.

The relevant facts here are contained in Kawananakoa's First Amended Complaint, which establishes that she sued in September 2015, seeking the invalidation of certain council actions taken between 2006 and 2012. *See* n.16, *infra*, at 16. She claimed entitlement to invalidation of the Actions on the basis that certain councilmembers voted on the Actions while in alleged violation of the City's Ethics Code Provisions including, (1) in the case of Councilmember Garcia, a conflict of interest and failure to disclose that conflict related to his employer's interest between 2008 and 2011, and violations of the gift-cap limit during that same time period; (2) in the case of Councilmember Cachola, the acceptance of forty-four "prohibited gifts" and failure to disclose unexplained "conflicts" resulting from his receipt of those gifts between 2008 and 2012, as well as apparent violations of the gift-cap limit between 2006 and 2012; and (3) as to other councilmembers, alleged violations of the gift-cap limit by Councilmembers Anderson, Apo, Dela Cruz, and Kobayashi at various times between 2006 and 2012.

Kawananakoa alleges that the Ethics Commission initiated investigations with regard to Councilmembers Garcia and Cachola. In both cases, Kawananakoa concedes that the Ethics Commission reached settlements that included civil fines against the councilmembers with no admission of ethics law violations and no findings or conclusions by the Ethics Commission as to whether

13

the laws were violated. Kawananakoa does not allege that the commission initiated or settled any other related investigations of any other councilmembers.

Finally, Kawananakoa directs us to the Hawai'i Constitution, the Revised Charter, and the Revised Ordinances. The constitution empowers political subdivisions to adopt their own charters "for its own self-government," which are superior to statutory provisions, subject only to the legislature's authority to enact general laws allocating and reallocating powers and functions. Haw. Const. art. VIII, § 2.

The Revised Charter commits the task of passing ordinances and resolutions, like the Actions, to the City Council. Rev. Charter Hon., art. III, § 3-101. Furthermore, it establishes and empowers the Ethics Commission. Rev. Charter Hon., art. XI, § 11-107. Among other powers, the Ethics Commission is charged with determining violations of the standards of conduct established by the Revised Charter and the Revised Ordinances, and is authorized to impose civil fines established by ordinance against elected and appointed officers and employees and to hold hearings and conduct investigations in matters implicating standards of conduct related to article XI of the Revised Charter. Furthermore, the commission is to recommend disciplinary action against officers and employees found to have violated the standards of conduct.

The Revised Charter further provides that the failure to comply with or any violation of the standards of conduct shall be grounds for impeachment of elected officers. Rev. Charter Hon., art. XI § 11-106. The Revised Ordinances reiterate that anyone violating the standards of conduct may be impeached and removed from office; authorize the city to "recover any fee, compensation, gift or profit received" by any violator; empower the Ethics Commission to impose civil fines against violators; and make any contract entered into by the city in violation of the article voidable.[14] Rev. Ord. Hon., art. VIII, § 3-8.5

---

[14] The Revised Ordinances further provide that, "in any action to void a contract pursuant to this article the interest of third parties who may be damaged thereby shall be taken into account, *and the action to void the*
(continued...)

14

Despite Kawananakoa's insistence that she is not trying to enforce the City's Ethics Code, her claims nonetheless stem entirely from its alleged violation. *See* First Amended Complaint, ¶¶ 18, 22-25. The unresolved questions we are left with present far-reaching policy implications, while highlighting the lack of judicially discoverable and manageable standards for resolving those questions and the impossibility of deciding them without an initial policy determination of a kind clearly for nonjudicial discretion.[15] On that basis, we conclude that a sufficient basis exists upon which we might affirm the Circuit Court's judgment on political question grounds.

     3.    The Ethics Code Provisions do not provide for invalidation of votes as a remedy.

Finally, Kawananakoa alleges that although the Ethics Commission is charged with enforcing the ethics laws, no regulatory scheme exists that places within the special competence of the Ethics Commission the question whether votes cast by City Council members while under undisclosed conflicts of interest are invalid, and the commission lacks the power to declare a law null and void. We agree, although the conclusion that we reach from those facts differs from the one advanced by Kawananakoa. Specifically, the fact that the remedies afforded

---

[14]/(...continued)
*official act or action is initiated within six months after the matter is determined by the ethics commission.*" Rev. Ord. Hon., art. VIII, § 3-8.5(b) (emphasis added). Here, of course, the commission has made no such determination.

[15]/    For example, as noted by the City:

> (i) What constitutes an interest in a proposal? (ii) How strong must such interest be to require disclosure or to trigger the need for a judicial remedy? (iii) What is the status of a vote if the undisclosed interest is adverse to the proposal or partially adverse? (iv) Is a city council action with sufficient "void votes" void or voidable, and if so, by whom? (v) What is the status of an action on which third parties have relied, which appropriates money already spent, which has been partially repealed or amended, or which itself amends or repeals another ordinance? (vi) If the action is void, then is it void *ab initio* or void as of the court's decision? and (vii) If void, what is the status of subsequent legislative executive actions taken pursuant to or in reliance on the voided action?

by the Ethics Code Provisions do not include Kawnanakoa's preferred remedy does not mean that the court is authorized to assume jurisdiction and create the remedy for itself.

The Revised Charter and the Revised Ordinances limit the court's involvement in enforcing the standards of conduct to three situations: (1) impeachment of a councilmember in certain circumstances, Rev. Charter Hon., art. XII, § 12-202; (2) recovering fees or gifts in violation of the Ethics Code through actions by corporation counsel, Rev. Ord. Hon., art. VIII, § 3-8.5(c); and (3) voiding contracts (but not the actual laws that implicate the contracts) "entered into by the city in violation of [the Ethics Code,]" Rev. Ord. Hon., art. VIII, § 3-8.5(b). The relief Kawananakoa seeks, however, goes well beyond that.

To address Kawananakoa's complaint, the court would hear evidence to determine whether the Ethics Code Provisions were violated by councilmembers between 2006-2012, and whether there was any connection between any violations and City Council votes taken thereafter on any measures, presumably to the present.[16]   Kawananakoa would then have the court (1) declare that the votes cast by councilmembers while under "undisclosed conflicts of interest" were invalid and that "resulting laws" are void and unenforceable if their passage turned on those invalid votes, (2) prohibit the City from enforcing those invalid laws, and (3) direct the City Council to hold a new vote on each invalid measure of "non-conflicted" councilmembers who are not otherwise disqualified from voting.

The political nature of the question posed by Kawananakoa's complaint is made evident by the multi-step analysis required to come to Kawananakoa's posited conclusion. Labeling the challenge as a procedural one does not insulate it. Challenges to a legislative body's action based, for instance, on

---

[16]   Although the First Amended Complaint expressly contests the Actions, which it contends turned on votes cast by councilmembers while under undisclosed conflicts, the claim for relief speaks more broadly to "any other bills or resolutions that may be identified through further investigation and discovery" while the prayer for relief refers to "the resulting laws."  It would appear necessary to achieve Kawananakoa's goals in the case, that she would ultimately take the position that all Council rail-related measures that have as their basis any of the identified Actions should be invalidated and require a re-vote.  See n.17 at 17-18, infra.

the body's failure to apply super-majority or voter-ratification requirements, or the conduct of the vote in closed rather than open session, address subjects where violations are determinable by reference to an underlying statute, ordinance, or rule, and where invalidation flows directly from the alleged violation. Challenges of this sort are readily determinable by the courts. *E.g.*, *Long Island Pine Barrens Soc'y, Inc. v. Cnty. of* Suffolk, 122 A.D.3d 688, 692 (N.Y. App. Div. 2014) (allowing taxpayer to challenge a resolution amending a water protection program on the basis that there had not been the requisite public referendum on the amendment); *Walleri v. City of Fairbanks*, 964 P.2d 463, 467–68 (Alaska 1998) (declining to apply the political-question doctrine to preclude review when plaintiff claimed that defendant violated its open meetings law).

On the contrary, the challenges in this case require determining whether an ethics code violation has occurred in the absence of a conclusion reached by the agency charged with investigating ethics-code-violation allegations, the appropriate sanction in the absence of an analysis of various third-party factors by the body charged with making penalty-assessment determinations, whether the ethics code violations have any relationship to the challenged actions,[17] and whether under any

---

[17]    It is not clear what principle would limit an invalidation remedy to the twelve challenged Actions such that it would not invalidate every legislative action taken by the City Council over some undetermined period of time following the violation.  Councilmember Garcia's alleged employment-related/failure to disclose conflict of interest might relate directly to the Actions, but as Kawananakoa alleges in her complaint, the scope is potentially broader than that:

> 36.   Between April 2008 and 2011, Garcia voted on at least fifty (50) bills and resolutions, many of which involved testimony by Kapolei Chamber of Commerce members, relating to various proposed projects affecting development in Kapolei and other parts of West Oahu, *including but not limited to* the proposed rail mass transit system, without disclosing his position with the Kapolei Chamber of Commerce to the City Council and the Ethics Commission as required by RCH § 11-103.

(Emphasis added.)  The specific allegations that Councilmember Cachola violated the gift-cap ordinance are similarly not limited to the challenged Actions:

> 55.   Between 2006 and 2008, Cachola accepted prohibited gifts from lobbyists with an aggregate value of nearly $5,000.

(continued...)

circumstances to apply an overarching common-law principle to invalidate a particular subset of votes and legislative actions when the ethics-code provisions do not provide for invalidation as a remedy. The lack of judicially-discoverable and manageable standards for resolving these questions and the impossibility of deciding these questions without an initial policy determination of a kind clearly for nonjudicial discretion, in light of the textually demonstrable constitutional commitment of the issue to a coordinate political department, signal the presence of political questions best left to the Ethics Commission and City Council to whom the issues have been constitutionally committed (via the Revised Charter) and make this a particularly inappropriate subject for judicial resolution.

Hawai'i courts follow the teachings of the Supreme Court where "political questions" are concerned. Central among those are that we remain mindful of the limits of our own authority while being respectful of the functions assigned to the "political branch of government." *Yamasaki*, 69 Haw. at 172, 737 P.2d at 456-57 (quoting *Bulgo v. Cty. of Maui*, 50 Haw. 51, 56, 430 P.2d 321, 325 (1967).

"A case involving a nonjusticiable political question must be dismissed when there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department.'" *Hussey*, 139 Hawai'i at 188, 384 P.3d at 1289 (quoting *Yamasaki*, 69 Haw. at 170, 737 P.2d at 455). Taken together, the Hawai'i Constitution, the Revised Charter, and the Revised Ordinances demonstrate a textually demonstrable

---

[17]/(...continued)
> 56. During the period 2008 through 2012, Cachola accepted 44 prohibited gifts from lobbyists with matters of interest before the City Council consisting of expensive meals, wines, and golf outings worth nearly $3,800.

> 57. The interest of lobbyists identified in the above paragraph 56 *included*, *inter alia*, the support of rail transit, land use, rezoning and development in certain districts, economic development, and environmental issues.

(Emphasis added.) As to the "five additional members of the City Council" who Kawananakoa alleges "voted on a number of the measures identifed herein while under undisclosed conflicts of interest", Kawananakoa similarly does not contend that those councilmembers limited their votes during the time frame in question to the challenged Actions.

constitutional commitment of the Actions to the City Council and of violations of the standards of conduct to the Ethics Commission. Mindful of the delicate political balance established by these sources, as well as the processes they establish and the protections they afford, we conclude that the political-question doctrine applies to this case, deprives the courts of jurisdiction over Kawananakoa's First Amended Complaint, and requires that we affirm the Circuit Court's Final Judgment. Therefore, we do not reach the question whether the common law allows for invalidation of municipal actions irrespective of the fact that the purportedly violated Revised Ordinances and Revised Charter provisions do not themselves provide for the form of relief requested.

V.     DISPOSITION

Based on the foregoing, the April 1, 2016 Final Judgment is affirmed.

DATED:  Honolulu, Hawai'i, February 21, 2018.

On the briefs:

James J. Bickerton and
Bridget G. Morgan
(Bickerton Dang,
A Limited Liability Law
Partnership)
for Plaintiff-Appellant.

Paul S. Aoki and
Robert M. Kohn,
Deputies Corporation Counsel,
and Mark J. Bennett,
Special Deputy Corporation
Counsel,
for Defendant-Appellee.

Presiding Judge

Associate Judge

19